Filed 11/18/20  Wong v. Mah CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| IAT WONG,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>GLENN MAH et al.,<br><br>    Defendants and Appellants. | B301018<br><br>(Los Angeles County<br>Super. Ct. No. BC671700) |

APPEAL from an order of the Superior Court of Los Angeles County.  Edward B. Moreton, Judge.  Affirmed.

James & Associates, Becky S. James, and Lisa M. Burnett, for Defendants and Appellants.

Fox Rothschild, John Shaeffer, and Henry Whitehead, for Plaintiff and Respondent.

# INTRODUCTION

Iat Wong sued Joseph Johnson, Glenn Mah, Clarence Mah, and several companies they partially owned after the companies failed to repay a loan. Neither Johnson nor the Mahs responded to the complaint, and the trial court entered a default and a default judgment against them. Johnson and the Mahs appeal the trial court's order denying their motion to vacate the judgment. We affirm.

# FACTUAL AND PROCEDURAL BACKGROUND

A.    *Wong Sues on a Note*

In August 2017 Wong filed this action alleging First Picks Holdings, LLC (First Picks), a company partially owned by Johnson and the Mahs, and several related entities (collectively, the First Picks Entities) borrowed $1 million from Wong's mother in 2014 pursuant to a promissory note. Johnson and the Mahs executed a collateral assignment in which they pledged their ownership interests in First Picks as collateral "to be recovered by [Wong's mother] in the event of a default by" the First Picks Entities. Wong's mother subsequently assigned her rights under the promissory note and collateral assignment to Wong.

Wong asserted causes of action for breach of contract against the First Picks Entities, alleging they failed to repay the loan by the maturity date, and against Johnson and the Mahs, alleging they breached their obligations under the collateral assignment. Wong alleged that, "[a]s a direct and proximate result of [the First Picks Entities'] breach of the" promissory note and Johnson's and the Mahs' "breach of the [c]ollateral

2

[a]ssignment," Wong sustained damages "estimated to be in excess of $1,000,000.00." Wong sought monetary damages against all defendants.

B.  *The Trial Court Enters the Defaults of, and a Default Judgment Against, Johnson and the Mahs*

Wong served Johnson and the Mahs with a summons and complaint. In September 2017 the parties, through their counsel, filed a stipulation to extend to October 9, 2017 the deadline for Johnson and the Mahs to respond to the complaint. On October 10, 2017 counsel for Wong notified counsel for Johnson and the Mahs they had not filed a responsive pleading. Counsel for Johnson and the Mahs stated they would file an answer that week, but they did not. On October 19, 2017 Wong filed requests for the entry of the defaults of Johnson and the Mahs, and the trial court entered the defaults.

On November 14 and 17, 2017 counsel for Wong sent an email to counsel for Johnson and the Mahs stating that Wong intended to obtain a default judgment. On January 23, 2018, having received no response, Wong filed a request for a default judgment. Counsel for Wong served counsel for Johnson and the Mahs with the request for a default judgment and the proposed judgment. The proposed judgment sought monetary damages against the First Picks Entities, Johnson, and the Mahs.

On November 21, 2018 the trial court entered a default judgment against all defendants. The judgment awards Wong a total of $1 million in damages, not including prejudment interest. The judgment provides that Johnson is jointly and severally liable with the First Picks Entities for $520,308 of the $1 million and that Glenn Mah and Clarence Mah are each jointly and

3

severally liable with the First Picks Entities, for $279,846 of the $1 million.[1]  On December 13, 2018 Wong served Johnson and the Mahs with the judgment.

C.   *Johnson and the Mahs File a Motion To Vacate the Judgment, Which the Trial Court Denies*

On March 8, 2019 the Mahs moved to vacate the default judgment and set aside the entry of their defaults on several grounds.  First, they argued the mandatory provision of Code of Civil Procedure section 473, subdivision (b),[2] required the trial court to vacate the entry of defaults and the default judgment because the Mahs' attorney, who advised them not to respond to the complaint, was responsible for entry of the defaults.  Second, the Mahs asked the court to exercise its discretion to vacate the entry of defaults and the default judgment under the discretionary provision of section 473, subdivision (b), because the Mahs believed Wong was seeking only to obtain their shares in First Picks, not monetary damages, and they were "surprised" when the court entered a judgment against them for monetary damages.  Third, the Mahs argued they failed to respond to the complaint because of excusable neglect: Glenn Mah because he relied on the advice of his attorney and was "consumed with the collapse of certain business ventures," Clarence Mah because he

---

[1]   Each of the First Picks Entities is jointly and severally liable for $1 million, plus $30,329.34 in prejudgment interest. Wong did not seek prejudgment interest against Johnson and the Mahs.  The total amount of the judgment against Johnson and the Mahs cannot exceed $1 million.

[2]   Undesignated statutory references are to the Code of Civil Procedure.

suffered from medical conditions causing cognitive decline and did not understand the nature of the lawsuit. Johnson filed a notice of joinder in the Mahs' motion.

In opposition to the motion, Wong argued the mandatory provision of section 473, subdivision (b), did not apply because, although several of the Mahs' attorneys filed declarations in support of the motion, none of them admitted he was responsible for, or committed a mistake that caused, the entries of default. Wong also argued the discretionary provision of section 473, subdivision (b), did not apply because Johnson and the Mahs did not, as required, seek relief within six months of the entries of default. In a supplemental brief filed at the court's request, Johnson and the Mahs argued that the judgment was "void" because the collateral assignment only required them to transfer to Wong their shares in First Picks in the event the First Picks Entities defaulted and that Johnson and the Mahs never personally guaranteed the loan.

On July 24, 2019, after a hearing without a court reporter, the trial court denied the motion. Johnson and the Mahs timely appealed.

## DISCUSSION

A. *The Motion by Johnson and the Mahs for Discretionary Relief Under Section 473, Subdivision (b), Was Untimely*

"[S]ection 473, subdivision (b) 'contains two distinct provisions for relief from default' [citation]—one makes relief discretionary with the court; the other makes it mandatory." (*Martin Potts & Associates, Inc. v. Corsair, LLC* (2016)

5

244 Cal.App.4th 432, 438; accord, *Jackson v. Kaiser Foundation Hospitals, Inc.* (2019) 32 Cal.App.5th 166, 173.) Johnson and the Mahs sought relief from default under both provisions.

The discretionary provision of section 473, subdivision (b), provides that "the court may, upon any terms as may be just, relieve a party or his or her legal representative from a judgment, dismissal, order, or other proceeding taken against him or her through his or her mistake, inadvertence, surprise, or excusable neglect. Application for this relief . . . shall be made within a reasonable time, in no case exceeding six months, after the judgment, dismissal, order, or proceeding was taken." "The general rule is that the six-month period within which to bring a motion" for discretionary relief under section 473, subdivision (b), "runs from the date of the default and not from the judgment taken thereafter." (*Rutan v. Summit Sports, Inc.* (1985) 173 Cal.App.3d 965, 970; see *Rappleyea v. Campbell* (1994) 8 Cal.4th 975, 980 ["more than six months had elapsed from the entry of default, and hence [discretionary] relief under section 473 was unavailable"]; *Pulte Homes Corp. v. Williams Mechanical, Inc.* (2016) 2 Cal.App.5th 267, 273 [defendants' motion for discretionary relief under section 473, subdivision (b), "filed less than six months after entry of the default judgment, but more than six months after entry of its default," was untimely]; *Weiss v. Blumencranc* (1976) 61 Cal.App.3d 536, 541 ["[t]he court's effort to set aside only the [default] judgments was ineffective as the six-month period runs from *the date of entry of default* rather than from *the date of entry of the default judgment*"].) "The reason for the rule is that vacation of the judgment alone ordinarily would constitute an idle act; if the judgment were vacated the default would remain intact and

6

permit immediate entry of another judgment giving the plaintiff the relief to which his complaint entitles him." (*Rutan*, at p. 970; see *Pulte Homes Corp.*, at p. 273 [""[i]f the judgment were vacated, it would be the duty of the court immediately to render another judgment of like effect, and the defendants, still being in default, could not be heard in opposition thereto""].)

The rule applies here. Johnson and the Mahs filed their motion to vacate the entries of default and the default judgment within six months of entry of the judgment, but well over a year after the trial court entered the defaults. Therefore, to the extent they sought discretionary relief under section 473, subdivision (b), for surprise or excusable neglect, the motion was untimely.

Johnson and the Mahs argue that the entry of default and entry of judgment are separate events and that the court could vacate the default judgment without "disturb[ing] the former." It doesn't work that way. Had the court vacated the judgment under the discretionary provision of section 473, subdivision (b), but not also vacated the entries of default, Johnson and the Mahs would have no "right[ ] to participate in the litigation" (*Garcia v. Politis* (2011) 192 Cal.App.4th 1474, 1479), and Wong could simply obtain another default judgment. (See *Pulte Homes Corp. v. Williams Mechanical, Inc.*, *supra*, 2 Cal.App.5th at p. 273.) To obtain meaningful relief from the default judgment, Johnson and the Mahs would still have to show the judgment was improper for some other reason.

The deadline is different, however, under the mandatory provision of section 473, subdivision (b), which requires the court to grant relief if the attorney for the moving party files an affidavit of fault. That provision states that "the court shall, whenever an application for relief is made no more than six

7

months after entry of judgment, is in proper form, and is accompanied by an attorney's sworn affidavit attesting to his or her mistake, inadvertence, surprise or neglect, vacate any (1) resulting default entered by the clerk against his or her client . . . or (2) resulting default judgment or dismissal . . . unless the court finds that the default or dismissal was not in fact caused by the attorney's mistake, inadvertence, surprise, or neglect." Unlike the discretionary provision of section 473, subdivision (b), the mandatory provision of section 473, subdivision (b), states that the six-month time limit runs from the "entry of judgment" and requires the court to vacate both any "resulting default" and "resulting default judgment." (See *Sugasawara v. Newland* (1994) 27 Cal.App.4th 294, 297.)

Johnson and the Mahs filed their motions to vacate the judgment within six months of the entry of the default judgment. Therefore, to the extent Johnson and the Mahs sought relief under the mandatory provision of section 473, subdivision (b), based on an attorney affidavit of fault, the motion was timely. (See *Sugasawara v. Newland, supra*, 27 Cal.App.4th at p. 297.) The question, however, is whether Johnson and the Mahs filed a proper attorney affidavit of fault. We will see that they did not.

      B.    *The Trial Court Did Not Err in Denying the Motion by Johnson and the Mahs Under the Mandatory Provision of Section 473, Subdivision (b)*

The mandatory provision of section 473, subdivision (b), which requires the court to vacate the entry of default and an ensuing default judgment where an attorney files an affidavit of fault, is "a narrow exception to the discretionary relief provision for default judgments . . . ." (*Zamora v. Clayborn Contracting*

*Group, Inc.* (2002) 28 Cal.4th 249, 257.) "The purpose of this provision '[is] to alleviate the hardship on parties who *lose their day in court* due solely to an inexcusable failure to act on the part of their attorneys.'" (*Ibid.*) "'[I]f the prerequisites for the application of the mandatory provision of section 473, subdivision (b) exist, the trial court does not have discretion to refuse relief.'" (*Carmel, Ltd. v. Tavoussi* (2009) 175 Cal.App.4th 393, 399; see *Solv-All v. Superior Court* (2005) 131 Cal.App.4th 1003, 1008 ["[i]f the statutory conditions are satisfied, the court *must* grant relief"].) "Where, as here, the applicability of the mandatory relief provision does not turn on disputed facts and presents a pure question of law, our review is de novo." (*SJP Limited Partnership v. City of Los Angeles* (2006) 136 Cal.App.4th 511, 516; accord, *Carmel, Ltd.,* at p. 399.)

Johnson and the Mahs argue they met the requirements for mandatory relief under section 473, subdivision (b), because the judgment resulted from the errors of three attorneys, Steve Korotash, Barney Balonick, and Fred Fenster, each of whom filed a declaration in support of the motion to vacate the default judgment. We will see, however, that none of the three attorneys submitted a declaration that satisfied the requirements of an attorney affidavit of fault to support mandatory relief under section 473, subdivision (b).

#### 1. *Korotash's Declaration Was Insufficient*

Korotash submitted a declaration in support of the motion, but he did not attest he made any mistake that caused the default of Johnson or the Mahs. Korotash simply attached to his declaration an email chain among himself, Glenn Mah, and Fenster, one of Glenn Mah's other attorneys, without providing

9

any further context. On November 14, 2017—after the court had already entered the defaults of Johnson and the Mahs—Fenster forwarded to Glenn Mah the November 14, 2017 email from counsel for Wong stating Wong intended to seek a default judgment. Glenn Mah forwarded this email to Korotash and asked whether he had "additional guidance" on "how we should proceed" with Wong. Korotash responded that they should "not reach out to them until we can resolve, or at least get further clarity" about, a pending SEC investigation against the Mahs.

Even assuming Korotash's email was a sufficient substitute for an "affidavit attesting to his . . . mistake" (§ 473, subd. (b)), a dubious proposition,[3] Korotash's purported fault did not cause the entries of the default. Section 473, subdivision (b), states that the court is not required to grant relief from a "default" or the "resulting default judgment" if "the court finds that the default . . . was not in fact caused by the attorney's mistake, inadvertence, surprise, or neglect." Here, Wong obtained the

---

[3] Where the attorney does not admit fault in his declaration, a party may still obtain relief under the mandatory provision of section 473, subdivision (b), if the declaration "unmistakably demonstrate[s the attorney's] fault." (*Carmel, Ltd. v. Tavoussi, supra*, 175 Cal.App.4th at p. 400.) Here, it is not clear Korotash was at fault for anything. Korotash did not advise Glenn Mah to ignore any deadlines or refrain from seeking to set aside the default. Korotash simply recommended that Glenn Mah not respond to Wong (not necessarily to Wong's complaint) until after the Mahs obtained additional information about the SEC investigation. Moreover, Korotash stated in his declaration that he was licensed to practice law in Texas and that Glenn Mah retained him for the SEC investigation, not for this action, and Glenn Mah copied the attorney representing him in this action, Fenster, on his emails to Korotash.

entries of default before Korotash sent the emails. Korotash did not state that he had previously offered similar advice to Glenn Mah (or even that he represented Glenn Mah prior to the entries of default). Nor did Korotash state that he ever represented Johnson or Clarence Mah or that he spoke to Johnson or Clarence Mah about this action.

*Cisneros v. Vueve* (1995) 37 Cal.App.4th 906 is on point. In that case the defendants moved for relief from a default judgment under the mandatory provision of section 473, subdivision (b), based on their attorney's neglect, even though it was undisputed the defendants hired the attorney after the court had entered their defaults. (*Cisneros*, at p. 910.) Like Johnson and the Mahs, the defendants argued they were nonetheless entitled to mandatory relief because "the default *judgment* [was] caused by the attorney's neglect," even though the attorney had "nothing to do with the underlying default." (*Ibid*.) The court in *Cisneros* disagreed, holding that "the Legislature's specific and careful use of both 'default' and 'default judgment' elsewhere in the statute shows that it understood the two terms and the material distinction between them" and chose to "authorize[ ] *relief* from both default and default judgment," while making "equally clear that for mandatory relief to apply the court must also satisfy itself that the *default* (i.e., the failure to respond) was in fact caused by attorney mistake or neglect." (*Id.* at pp. 910-911.)

Citing *Behm v. Clear View Technologies* (2015) 241 Cal.App.4th 1, Johnson and the Mahs argue a court must vacate a default judgment caused by an attorney's error even if the error did not cause the underlying default. *Behm* neither addressed this issue nor supports their argument. In *Behm* the defendant sought relief from the entry of default (not default

11

judgment) under the mandatory provision of section 473, subdivision (b), which the trial court denied because it found the attorney's declaration of fault was not credible. (*Behm,* at pp. 15-16.) The defendant separately sought to vacate the default judgment on the ground that it did not receive adequate notice of the amount of punitive damages awarded in the judgment. (*Id.* at pp. 11-13.) In affirming the order granting relief, the court in *Behm* held the trial court was not required to set aside the entry of default simply because it vacated the default judgment on this latter ground. (*Id.* at pp. 16-17.) *Behm* has no bearing on whether a defendant may seek mandatory relief from a default judgment if the attorney's error did not cause the underlying default.

### 2. *Balonick's and Fenster's Declarations Were Insufficient Too*

Balonick and Fenster also submitted declarations in support of the motion to vacate the default judgment. But Johnson and the Mahs did not argue in the trial court they were entitled to relief under the mandatory provision of section 473, subdivision (b), based on these declarations; they argued only that Korotash's errors caused the default judgment. Therefore, Johnson and the Mahs forfeited the argument they are entitled to relief based on the declarations of Balonick and Fenster. (See *Johnson v. Greenelsh* (2009) 47 Cal.4th 598, 603; *Colyear v. Rolling Hills Community Assn. of Rancho Palos Verdes* (2017) 9 Cal.App.5th 119, 137, fn. 5.)

Even if not forfeited, the argument lacks merit. The declarations of Balonick and Fenster are even more deficient for purposes of the mandatory provision of section 473,

12

subdivision (b), than Korotash's declaration. Balonick in his declaration summarized Clarence Mah's health issues and described meeting and conferring with Wong's counsel prior to filing the motion to vacate the default judgment. Fenster attached to his declaration a letter he sent to counsel for Wong in September 2018—over a year after the court had entered the defaults of Johnson and the Mahs—in which Johnson and the Mahs proposed having the court enter a judgment requiring them to give Wong their ownership interests in First Picks. Neither Balonick nor Fenster stated they made any mistakes. The only discussion of the circumstances causing the entries of default was Balonick's discussion of Clarence Mah's health issues.

Johnson and the Mahs argue Balonick and Fenster would "clearly" be at fault if Wong served them with his request for entry of default judgment in January 2018 and Balonick and Fenster "ignored [the request] without telling [their] clients." Perhaps. But neither Balonick nor Fenster stated in their declarations this occurred. And even if they had, any purported fault on the part of Balonick and Fenster in failing to respond to Wong's request for entry of default judgment would have occurred well after the entries of default.

C. *The Judgment Is Not Void*

Johnson and the Mahs make three arguments why the judgment is void. First, they argue the judgment requires them to pay damages in excess of those alleged in the complaint. Second, they argue the judgment erroneously awards Wong monetary damages because, under the collateral assignment, they did not agree to personally guarantee the loan to the First

13

Picks Entities.  Third, they argue the judgment resulted from extrinsic fraud.  Each argument fails.

>1.    *The Judgment Does Not Award Damages in Excess of Those Wong Alleged in the Complaint*

Section 580, subdivision (a), provides:  "The relief granted to the plaintiff, if there is no answer, cannot exceed that demanded in the complaint, in the statement required by Section 425.11, or in the statement provided for by Section 425.115; but in any other case, the court may grant the plaintiff any relief consistent with the case made by the complaint and embraced within the issue."[4]  "Section 580 is strictly construed 'in accordance with its plain language'—'a plaintiff cannot be granted more relief than is asked for in the complaint.' [Citation.]  A default judgment greater than the amount specifically demanded in the complaint is void as beyond the court's jurisdiction." (*Airs Aromatics, LLC v. CBL Data Recovery Technologies, Inc.* (2018) 23 Cal.App.5th 1013, 1018; see *Low v. Golden Eagle Ins. Co.* (2002) 101 Cal.App.4th 1354, 1363 ["The purpose of the rule that a plaintiff's relief on default cannot exceed the amount prayed for in the complaint 'is to insure that defendants in cases which involve a default judgment have adequate notice of the judgments that may be taken against

---

[4]    Section 425.11, subdivision (b), requires the plaintiff to serve a statement of damages in personal injury and wrongful death cases before the court may enter the defendant's default.  Section 425.115, subdivision (f), requires the plaintiff to serve a statement before the court may enter a default judgment that includes punitive damages. (See *Behm v. Clear View Technologies*, *supra*, 241 Cal.App.4th at p. 9; *Weakly-Hoyt v. Foster* (2014) 230 Cal.App.4th 928, 932-933.)

14

them.'"].) "'We review de novo the trial court's determination that a default judgment is or is not void'" on the ground it exceeds the amount stated in the complaint. (*Airs Aromatics,* at p. 1018; see *Rodriguez v. Cho* (2015) 236 Cal.App.4th 742, 752.)

Wong alleged in his complaint that Johnson and the Mahs breached the terms of the collateral assignment and that, "[a]s a direct and proximate result of [their] breach," Wong "sustained damages according to proof at or before trial, estimated to be in excess of $1,000,000." In his prayer for relief Wong reiterated he was seeking monetary damages from defendants "and each of them." (See *Becker v. S.P.V. Construction Co.* (1980) 27 Cal.3d 489, 494 ["a prayer for damages according to proof passes muster . . . if a specific amount of damages is alleged in the body of the complaint"]; *People ex rel. Lockyer v. Brar* (2005) 134 Cal.App.4th 659, 667 ["courts must look to the prayer of the complaint *or* to 'allegations in the body of the complaint of the damages sought' to determine whether a defendant has been informed of the 'maximum liability' he or she will face for choosing to default"]; *National Diversified Services, Inc. v. Bernstein* (1985) 168 Cal.App.3d 410, 412 [plaintiff could obtain a default judgment of $32,500 where the complaint sought "'damages which are in excess of $10,000,'" plus return of boat valued at $22,500].) The default judgment does not require the individual defendants collectively to pay more than $1 million in damages; indeed, the judgment limits First Picks' liability to $1 million; Glenn Mah's liability to $279,846 of the $1 million, Clarence Mah's to $279,846 of the $1 million, and Johnson's to $520,308 of the $1 million. The default judgment did not exceed the amount demanded in the complaint.

15

2.    *The Judgment Is Not Void Because of the Terms*
*of the Collateral Assignment*

Johnson and the Mahs argue the judgment is void because the collateral assignment provides that, in the event the First Picks Entities defaulted on the promissory note, Johnson and the Mahs would only have to give Wong their interests in First Picks. Johnson and the Mahs contend that, because they did not personally guarantee the loan, Wong cannot recover monetary damages from them.

A default judgment may be void for various reasons (in addition to awarding damages in excess of those alleged in the complaint), including that the court lacks subject matter jurisdiction (*Varian v. Medical Systems, Inc. v. Delfino* (2005) 35 Cal.4th 180, 196) and that the court does not have personal jurisdiction over a defendant against whom the court entered judgment (*Strathvale Holdings v. E.B.H.* (2005) 126 Cal.App.4th 1241, 1250), such as where the plaintiff did not properly serve the defendant with the summons and complaint (*Ellard v. Conway* (2001) 94 Cal.App.4th 540, 544).  Johnson and the Mahs do not cite any authority, however, suggesting a default judgment may be void because the defendant against whom the court entered judgment has a meritorious defense, not timely asserted, to the complaint.

Citing *Dill v. Berquist Construction Co.* (1994) 24 Cal.App.4th 1426, Johnson and the Mahs argue a judgment is void on its face when its invalidity is apparent upon an inspection of the judgment roll.  (See *id.* at p. 1441.)[5]  Johnson and the Mahs

---

[5]    "'A judgment roll is defined in section 670 . . . and consists of the papers therein enumerated.  This "roll" does not depend upon the fact that the clerk has fastened these papers together,

16

argue that, because Wong attached the collateral assignment to the complaint, we may independently review the terms of the collateral assignment to determine whether the judgment awards relief consistent with the terms of the collateral assignment. *Dill* does not support Johnson and the Mahs' argument. The court in *Dill*, a personal injury case, did not independently review any documents or consider the underlying merits of the case. The court looked only to the proofs of service, which showed that the plaintiff did not properly serve the defendants. (*Id.* at pp. 1441-1442.)

Johnson and the Mahs are actually arguing, under the guise of asserting the default judgment is void, that they did not breach the terms of the collateral assignment or that they cured any breach. Johnson and the Mahs contend that, well after the court entered their defaults, they "offered to duly tender their proportionate interests" in First Picks to Wong, "which was the absolute most required of them by the collateral assignment," an offer Wong refused. To the extent they wanted to assert either of

nor do any other papers which the clerk may have joined with those which the statute declares shall constitute the judgment roll become a part of such roll by reason of having been so joined. The papers thus designated as forming the judgment roll are those which are elsewhere mentioned in the code as a part of the proceedings culminating in the judgment."' (*Worthington Corp. v. El Chicote Ranch Properties, Ltd.* (1967) 255 Cal.App.2d 316, 325.) "In cases where there is no answer filed by the defendant, the judgment roll includes: 'the summons, with the affidavit or proof of service; the complaint; the request for entry of default with a memorandum indorsed thereon that the default of the defendant in not answering was entered, and a copy of the judgment . . . .'" (*Calvert v. Al Binali* (2018) 29 Cal.App.5th 954, 960.)

these defenses, however, they should have timely responded to the complaint (or, if they had a legitimate excuse for their defaults, timely moved to set them aside). By failing to do so, Johnson and the Mahs admitted all the well-pleaded facts in the complaint (see *Molen v. Friedman* (1998) 64 Cal.App.4th 1149, 1153), including Wong's allegation they failed to honor their obligations under the collateral assignment. Johnson and the Mahs chose not to respond to the complaint, gambling the court would not award Wong monetary damages. They are not entitled to relief because their gamble failed.

### 3. *Johnson and the Mahs Forfeited Any Argument the Judgment Resulted from Extrinsic Fraud*

Finally, Johnson and the Mahs argue the judgment is void as the result of extrinsic fraud. A judgment that results from extrinsic fraud, however, is not void. Rather, the trial court has discretion under its "inherent authority to vacate a default and default judgment on equitable grounds," including extrinsic fraud. (*Bae v. T.D. Service Co. of Arizona* (2016) 245 Cal.App.4th 89, 97; accord, *County of San Diego v. Gorham* (2010) 186 Cal.App.4th 1215, 1228; see *Rappleyea v. Campbell, supra,* 8 Cal.4th at p. 981 ["a trial court may still vacate a default on equitable grounds even if statutory relief is unavailable"].) "'Extrinsic fraud usually arises when a party is denied a fair adversary hearing because he has been "deliberately kept in ignorance of the action or proceeding, or in some other way fraudulently prevented from presenting his claim or defense."'" (*Bae*, at p. 97; see *County of San Diego*, at pp. 1228-1229.) "We review a challenge to a trial court's order denying a motion to vacate a default on equitable grounds," such as extrinsic fraud,

18

"for an abuse of discretion." (*Rappleyea*, at p. 981; accord, *County of San Diego*, at p. 1230.)

Johnson and the Mahs did not ask the trial court to vacate the judgment because of extrinsic fraud. Therefore, they forfeited the argument. In addition, the parties dispute the facts relevant to Johnson and the Mahs' extrinsic fraud argument. (See *Krechuniak v. Noorzoy* (2017) 11 Cal.App.5th 713, 750 ["the general rule" that a party may not raise a new theory on appeal "is especially true when the theory newly presented involves controverted questions of fact or mixed questions of law and fact"].) Johnson and the Mahs contend Wong induced them to believe he would request a default judgment that only awarded him their shares in First Picks (despite the contrary allegations in his complaint). Wong denies he ever said or implied he was not seeking monetary damages. This is not an issue we can decide on appeal, in the context of a forfeited extrinsic fraud argument or otherwise. (See *Estate of O'Connor* (2017) 16 Cal.App.5th 159, 163 ["'It is not our task to weigh conflicts and disputes in the evidence; that is the province of the trier of fact.'"].)

## DISPOSITION

The order is affirmed.  Wong is to recover his costs on appeal.


SEGAL, Acting P. J.


We concur:



FEUER, J.



RICHARDSON, J.[*]

---

[*]  Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.